# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF NORTH CAROLINA
# STATESVILLE DIVISION
# CIVIL ACTION NO. 5:19-CV-00105-KDB-DCK

| | |
|---|---|
| **BAM Capital, LLC,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | **ORDER** |
| ) | |
| **Houser Transport, Inc.** ) | |
| **Houser Logistics, Inc.** ) | |
| **Candy Feaganes** ) | |
| **Sibling Leasing, LLC** ) | |
| **Sherry Lee** ) | |
| **Samuel Houser,** ) | |
| ) | |
| **Defendant.** ) | |
| ) | |

**THIS MATTER** is before the Court on Plaintiff's Motion for Attorney Fees and Related Costs (Doc. No. 24). Defendants have not responded to the motion, consistent with their general lack of dispute as to the Plaintiff's entitlement to a judgment (and perhaps their practical inability to pay the multi-million dollar judgment that has already been entered). However, notwithstanding the absence of a formal response,[1] the Court still has an independent duty to carefully consider the motion, Plaintiff's memorandum of law and exhibits and award only those fees and costs that it finds to be appropriate and reasonable under the relevant circumstances and governing law.

---

[1] Plaintiff's motion notes that pursuant to the Local Rules counsel for Plaintiff contacted Defendants' counsel seeking consent for the relief requested but "BAM was unable to obtain defendants' consent." It is not clear from this representation whether counsel for the parties actually communicated with each other on the merits of the motion (and Defendants opposed it) or whether the communication itself was unsuccessful.

After full consideration, the Court finds that the motion for attorneys' fees should be **GRANTED**, but that the amount of fees and costs requested is excessive. In nearly all respects, Defendants have not opposed Plaintiff's claims in this straightforward action seeking a judgment for non-payment under commercial notes, agreements and guarantees, so the amount of legal work undertaken and fees requested are unreasonable. Also, Plaintiff's counsel has not properly supported their proposed hourly billing rates. Accordingly, Plaintiff will be awarded attorneys' fees in the amount of $68,697.75, reflecting a 25% reduction in its requested fee award and $1394.26 in costs, reflecting only the portion of those requested costs that the Court finds to be true out of pocket costs (excluding "computer research" costs of $839.29, which are more properly classified as law firm overhead encompassed by counsel's hourly billing rates).

## I.     RELEVANT BACKGROUND

In 2016, Defendant Houser Transport entered into a Factoring Agreement with Max Capital Group, LLC, which was subsequently acquired by Plaintiff BAM Capital, LLC ("BAM"). The Factoring Agreement is secured by three Continuing Guaranty Agreements (the "Guaranty Agreements") made by the individual Defendants Houser, Feaganes and Lee. In April 2019, the parties executed a Forbearance Agreement and an accompanying Promissory Note in connection with certain events of default that had occurred under the Factoring Agreement. On August 9, 2019, Plaintiff filed this action seeking Judgment against the Defendants for all amounts allegedly due under the parties' various agreements.

The corporate defendants – Houser Transport, Inc.; Houser Logistics, Inc.; and Sibling Leasing, LLC – did not respond to the Complaint and upon Plaintiff's motion the Clerk of this Court entered Default against them on November 5, 2019 (Doc. No. 19). All of the individual Defendants answered the Complaint, admitting its material allegations. On October 29, 2019,

Plaintiff filed its Motion for Summary Judgment. The individual Defendant Samuel Houser and the defaulted corporate Defendants did not respond to the Motion for Summary Judgment. Defendants Feaganes and Lee responded to the Motion, but only opposed Plaintiff's proposed calculation of post-judgment interest.

On November 20, 2019, the Court granted Plaintiff's Motion for Summary Judgment and a judgment in the amount of $3,331,825.37 was entered against the Defendants pursuant to that Order. (Doc. 22-23). Thereafter, Plaintiff filed its motion seeking attorneys' fees in the amount of $91,597, reflecting over 128 hours of billable time by two law firm partners, two associate attorneys, two paralegals and a "project assistant." The motion also requests $2,233.55 in costs, including court filing fees; a pro hac vice fee; copy, shipping and postage costs; and charges for "Computer Research."

## II.     LEGAL STANDARD

Once a party crosses the statutory threshold to a fee award of some kind, the Court has discretion to determine the amount of the award. *J.D. ex rel. Davis v. Kanawha County Bd. of Educ.*, 571 F.3d 381, 387 (4th Cir.2009) (*citing Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.,* 489 U.S. 782, 789-90, 109 S.Ct. 1486, 103 L.Ed.2d 866 (1989)); *Robinson v. Equifax Info. Services,* 560 F.3d 235, 243 (4th Cir.2009). "In Hensley, the Supreme Court noted that '[t]here is no precise rule or formula' for determining the amount of attorneys' fees, and that district courts 'necessarily [have] discretion' in such matters." *Kanawha County Bd.*, 571 F.3d at 387 (quoting Hensley, 461 U.S. at 436-37). The burden is on the party requesting fees and costs to demonstrate, by clear and convincing evidence, that the fees and costs requested are reasonable. *EEOC v. Nutri/System, Inc.*, 685 F. Supp. 568, 572 (E.D. Va. 1988) (citing *Hensley v.*

*Eckerhart*, 461 U.S. 424, 433 (1983), *Spell v. McDaniel*, 824 F.2d 1380, 1402 (4th Cir. 1987)); *see also Bland v. Fairfax Cty.*, 2011 WL 5330782, at *3 (E.D. Va. Nov. 7, 2011).

In determining a reasonable fee, the court employs the twelve-factor test set out by the Supreme Court in Hensley:

> (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of employment by the attorney due to the acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases.

*Hensley*, 461 U.S. at 430 n. 3 & 434 (adopting same from *Johnson v. Georgia Highway Express, Inc.*, 488 F.2d 714 (5th Cir.1974)). "The most useful starting point for determining the amount of a reasonable fee is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate. This calculation provides an objective basis on which to make an initial estimate of the value of a lawyer's services." *Hensley,* 461 U.S. at 433. This is the "lodestar" approach, which is regularly employed in numerous contexts in which Federal courts are called upon to determine the amount of reasonable attorneys' fees. *See Kanawha County Bd.*, 571 F.3d at 387.

A Plaintiff must "furnish specific support for the hourly rate[s] [it] proposes." *Nutri/System*, 685 F. Supp. at 573. A court must consider the "prevailing market rates in the relevant community" when determining what a reasonable hourly fee is in a given case. *Rum Creek Coal Sales, Inc. v. Caperton*, 31 F.3d 169, 175 (4th Cir. 1994) (quoting *Blum v. Stenson*, 465 U.S. 886, 895 (1984)). "The relevant market for determining the prevailing rate is ordinarily the community in which the court where the action is prosecuted sits," however, "[i]n circumstances where it is reasonable to retain attorneys from other communities ... the rates in

those communities may also be considered." *Id.* This is generally accomplished "through affidavits from disinterested counsel, evidence of awards in similar cases, or other specific evidence that allows the court to determine 'actual rates which counsel can command in the [relevant] market.' " *Project Vote/Voting for America, Inc. v. Long*, 887 F. Supp. 2d 704, 710 (E.D. Va. 2012) (quoting *Spell*, 824 F.2d at 1402). Finally, in determining the reasonable hourly rate in a given case, a court may look toward the *Johnson* factors, specifically factors three, five, nine, and twelve. *See Alexander S.*, 929 F. Supp. at 936-38 (considering *Johnson* factors three, four five, eight, nine, ten, eleven, and twelve when determining reasonable hourly rate).

Also, counsel must present records of the time worked on the matter in a format which allows the Court an opportunity to determine if the time was reasonably spent. The practice of "block billing" (which was employed by Plaintiff's counsel here) involves listing multiple tasks within a single time entry. This practice may be problematic because it does not provide the district court with a clear sense of how many hours were performed on a particular task because multiple tasks are lopped into a single block of hours. In lopping multiple tasks into a single time entry, counsel's time records frustrate a court's attempt to review whether an attorney's hours on a given task were reasonable versus excessive. Courts faced with block billing entries often reduce, by a given percentage, the total time requested or reduce the individual time entries infected by block billing. *See Denton v. PennyMac Loan Servs., LLC*, 252 F. Supp. 3d 504, 525-26 (E.D. Va. 2017) (noting that "[t]he traditional remedy for block billing is to reduce the fee by a fixed percentage reduction" and reducing total hours by 10%); *Lusk v. Virginia Panel Corp.*, 96 F. Supp. 3d 573, 583 (W.D. Va. 2015) (reducing overall fee by 5% for block billing); *McAfee v. Boczar*, 2012 WL 6623038, at *2 (E.D. Va. Dec. 19, 2012) (reducing block billing entry by 10%), *aff'd* 738 F.3d 81, 90-91 (4th Cir. 2013); *Wolfe v. Green*, 2010 WL 3809857, at *8 (S.D.W. Va. Sept. 24,

2010) (collecting cases applying 10% or 15% reduction for block billing and opting to apply 10% reduction for block billing where hours did not appear facially unreasonable).

### III. DISCUSSION

There is no dispute that the relevant Factoring Agreement, Promissory Notes and Guaranty Agreements all contain provisions which entitle Plaintiff to recover its reasonable attorneys' fees incurred in attempting to enforce or collect on Defendants' obligations under those agreements. *See* Doc. 24-1 at 2-4. Therefore, Plaintiff is entitled to recover its reasonable attorneys' fees and costs from the Defendants.

As discussed above, the first step in determining the amount of this reasonable attorneys' fee is to calculate the "lodestar" fee, which is the result of multiplying the number of hours reasonably expended on the litigation by a reasonable hourly rate. However, in this case, Plaintiff has hindered the Court's ability to determine both the reasonableness of its hourly rates and the number of hours reasonably expended on the litigation. With respect to the reasonableness of the hourly rates of its counsel King & Spalding LLP (which range from $870 - $920 an hour for firm partners, $655 - $755 an hour for associates and $335 - $350 an hour for paralegals) the only support offered for the reasonableness of the rates is Plaintiff's counsel's own representation that the rates reflect "prevailing market rates" in the relevant community. While the Court has some familiarity with the substantial "standard" hourly rates recently charged by large law firms in the Charlotte legal market, it is also aware that many firms have significantly  "discounted" rates (by 15% or more) for many clients and types of legal work (including the type of relatively simple breach of contract / collection work involved in this litigation). Thus, it is not appropriate for the

Court to just accept Plaintiff's counsel's representation that their firm's copious hourly rates reflect prevailing market rates for the type of work at issue here.[2]

Further, the Court must question the number of hours spent on the litigation. This was, as presented to the Court and reflected in the record, a simple legal case (although the number of agreements and guarantees added some complexity). As described in the Complaint:

> This lawsuit stems from the breach of a Factoring and Security Agreement … by Defendants, who have acknowledged that they defaulted on the Factoring Agreement and have since refused to make payments on the amounts now due to Plaintiff. The Factoring Agreement is secured by three Continuing Guaranty Agreements … made by Houser, Feaganes, and Lee, respectively.

Doc. 1 at ¶1. Also, the Defendants did almost nothing to contest the claims, waiving service, admitting the material allegations of the Complaint and filing a very short response to the motion for summary judgment that only challenged (successfully) the calculation of post-judgment interest.

Under these circumstances, it appears that it was unnecessary and unreasonable for four lawyers and two paralegals to collectively spend over 128 hours on the litigation, including numerous time entries reflecting legal research related to "UCC issues," "bankruptcy litigation," "summary judgment" and "default judgment"; preparing "outlines" for client conferences; and researching / summarizing basic rules for executing on judgments in North Carolina. Further, as noted above, Plaintiff's counsel's use of "block billing" time entries does not allow the Court to evaluate how much time was spent on particular tasks to more precisely analyze the reasonableness of any specific work.

---

[2] The Court is mindful that the absence of supporting affidavits from other lawyers may, in whole or part, reflect Plaintiff's counsel's efforts to limit their time spent on the motion for attorneys' fees in light of the practical prospects for their client to recover awarded fees from the Defendants; however, the Court must base its ruling on the record presented.

In sum, the Court is left with a clear belief that the amount of attorneys' fees requested is excessive, both with respect to counsel's hourly rates and the time spent on the litigation, but it has limited information from which to judge the extent to which the fee request should be reduced. Accordingly, the Court will – in the conservative exercise of its discretion – reduce Plaintiff's attorneys' fee request of $91,597 by 25% to $68,697.75, which closely approximates a reduction in counsel's hourly rates by 15% and hours expended by 10%. This award more than fairly reimburses Plaintiff for a reasonable attorneys' fee taking into account all the circumstances of this action.

The Court must similarly decline to award the full amount of Plaintiff's request for costs and expenses related to the litigation. The claimed costs total $2,233.55 and fall into several categories, including court filing fees ($1000); a pro hac vice fee ($281); certified copy, shipping and postage costs ($114.26); and charges for "Computer Research" ($839.29). The Court finds that the payments to third parties for fees and costs are reasonable and should be awarded to Plaintiff.

However, the Court will not include the claimed charges for computerized research as part of the awarded costs. While the Fourth Circuit has not yet addressed this issue directly and courts have reached different conclusions (particularly in older cases),[3] the Court finds that the better view is that computer research costs are most properly considered to be part of a law firm's overhead costs, which are encompassed in each attorney's hourly billing rate and thus cannot be

---

[3] *Compare, e.g., Standley v. Chilhowee R–IV Sch. Dist.,* 5 F.3d 319, 325 & n. 7 (8th Cir.1993) ("computer-based legal research must be factored into the attorneys' hourly rate, hence the cost of computer time may not be added to the fee award") with *Trustees of the Constr. Indus. and Laborers Health and Welfare Trust v. Redland Ins. Co.,* 460 F.3d 1253, 1258–59 (9th Cir.2006); *Arbor Hill Concerned Citizens Neighborhood Ass'n v. County of Albany,* 369 F.3d 91, 98 (2d Cir.2004) (expenses are generally recoverable if they are customarily charged to the firm's clients as a separate disbursement).

recovered in addition to the award of attorneys' fees . While an attorney might rarely and literally dust off a bound volume of the Federal Reporter to read a relevant court decision in a firm "library," nearly all legal research in most law firms (particularly large law firms) is done through "computer research." Therefore, the cost of providing access to online legal resources is no different than the cost of the books that formerly served as the primary source of legal research and were universally acknowledged to be part of the law firm's overhead costs.[4]

Accordingly, the Court finds that, absent some unusual and particular circumstance that is not presented here, computer research costs may not be separately awarded as costs or expenses in addition to the award of attorneys' fees. *See Irwin Industrial Tool Company v. Worthington Cylinders Wisconsin, LLC,* 747 F. Supp. 2d 568, 598 (W.D.N.C. 2010) (holding that in the absence of any controlling authority mandating the award of expenses for computer research and in light of this District's practice of disallowing such costs (see LCvR 54.1(G)(6)) the court should exercise its discretion to decline to award expenses incurred in performing online research); *In Re Outsidewall Tire Litigation*, 52 F. Supp. 3d 777 (E.D. Va. 2014) (declining to award online legal research charges because absent a specific agreement to the contrary overhead expenses are typically neither taxable nor recoverable costs); *Morcher v. Nash*, 32 F. Supp. 2d 239, 263 (D.V.I. 1998) (explaining that "computerized legal research differs from traditional research only in the mode of retrieval, and attorneys routinely purchase research materials as part of overhead"); *In re Rio Hair Naturalizer*, 1996 WL 780512 (E.D. Mich. 1996) ("computerized legal research ... [is]

---

[4] Also, it is now common for both Westlaw and Lexis to charge law firms a flat monthly fee for unlimited access to their online research services, which calls into substantial question if such expenses can properly be allocated to a particular client as a separate disbursement. *See Irwin*, 747 F. Supp. 2d at 598.

considered by most courts as an 'overhead' component of attorneys' fees, and not separately compensable as costs."19).

Deducting the amount of "computer research" charges of $839.29 from the total request of $2,233.55 results in a final award of costs and expenses in the amount of $1,394.26.

## IV. ORDER

**NOW THEREFORE IT IS ORDERED THAT**:

Plaintiff's Motion for Attorney Fees and Related Costs (Doc. No. 24) is **GRANTED** and Plaintiff is hereby awarded attorneys' fees in the amount of $68,697.75 and costs of $1,394.26. **JUDGMENT** is thus hereby entered in the amount of $70,092.01. Post-judgment interest shall accrue on this Judgment pursuant to 28 U.S.C. § 1961.

**SO ORDERED ADJUDGED AND DECREED**.

Signed: January 8, 2020

Kenneth D. Bell
United States District Judge